OPINION *Page 2 
{¶ 1} These are two appeals consolidated for purposes of this opinion, brought by Kizzy Bonner, the natural mother of Dakota Raine Bonner, a minor child, and Fred Strong, the putative father, from judgments finding Dakota to be a dependent child, terminating the parents' parental rights, and granting permanent custody of the child to appellee Stark County Department of Job and Family Services.
 {¶ 2} Appellant Strong assigns three errors to the trial court:
 {¶ 3} "I. THE TRIAL COURT'S DECISION TO AWARD THE STATE PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
 {¶ 4} "II. THE TRIAL COURT ERRED IN FAILING TO HOLD SEPARATE ADJUDICATORY AND DISPOSITIONAL HEARINGS PRIOR TO GRANTING PERMANENT CUSTODY.
 {¶ 5} "III. THE TRIAL COURT ERRED IN ADMITTING HEARSAY TESTIMONY DURING THE PERMANENT CUSTODY HEARING."
 {¶ 6} Appellant Bonner also assigns three errors to the trial court:
 {¶ 7} "I. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD WAS DEPENDENT WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.
 {¶ 8} "II. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILD CANNOT OR SHOULD NOT BE PLACED WITH APPELLANT WITHIN A REASONABLE TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE. *Page 3 
 {¶ 9} "III. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILD WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."
 {¶ 10} Dakota was born on June 27, 2008. On June 30, 2008, JFS filed a complaint requesting the court to find Dakota to be a dependent child, and asking for permanent custody. On July 1, 2008, the court held an emergency shelter care hearing, and placed the child into the emergency temporary custody of JFS. The court set the adjudicatory hearing for July 30, 2008, but the matter was continued because appellant Strong's first appointed attorney withdrew and a new attorney was appointed to represent him. The court reset the adjudicatory hearing to be heard prior to the dispositional hearing on September 4.
 {¶ 11} On September 4, 2008, the court called the matter for hearing. The State indicated it prepared to proceed in both the adjudicatory and dispositional hearings. Neither counsel for the parents objected, although counsel for appellant Strong requested a continuance because of lack of contact with his client. The court overruled the motion to continue, as well as both parents' motions to dismiss the complaint.
 {¶ 12} The State first called appellant Bonner as on cross examination. Bonner admitted she was currently incarcerated for violating the terms of her probation. The violations were living with a felon and moving without permission. She did not indicate how long she was to be imprisoned. She testified Strong was the felon she lived with, and he is a registered sex offender. Bonner testified Strong is Dakota's father. Bonner testified she had been given no opportunity to provide any care or support for her baby. *Page 4 
 {¶ 13} Bonner testified her parental rights had been involuntarily terminated as to five other children, although the case involving two of the children was on appeal at the time of the hearing. (The case has since been affirmed by this court, see In the Matter of: Calhoun/BonnerMinor Children, Stark App. No. 2008-CA-00118, 2009-Ohio-5458.)
 {¶ 14} JFS then called appellant Strong as on cross examination. Strong testified he had been out of prison for about a year, but was still getting himself together and back into society. Strong testified he is Dakota's father, but he had not established paternity because there was a problem with the court order. Strong admitted he had previously lost permanent custody of a child. Strong testified he was waiting for a determination on his disability claim, and is unable to work. His family supported him financially, and he was living in a large efficiency apartment.
 {¶ 15} JFS then called Cynthia Moore, a supervisor from JFS. Over the objection of counsel for Bonner, she testified she supervised the worker assigned to this case and had information relating to Bonner at the time of the complaint. Moore testified Bonner was incarcerated on a probation violation in January of 2008, and prior to that time, lived with Strong. She did not know of anyone else contacting the agency claiming to be Dakota's father. Moore did not know the address where Strong and Bonner had lived, and had never met Strong. Moore testified her contact with Bonner had been prior to Dakota's birth and during the previous case. Both parents moved to strike Moore's testimony, arguing it was hearsay, but the court overruled the motions.
 {¶ 16} Neither Bonner nor Strong presented any evidence, but they and JFS made closing arguments regarding whether the child was dependent. The court indicated it would take the case under advisement, and ended the hearing. *Page 5 
 {¶ 17} On September 9, 2008, the court entered a judgment finding by clear and convincing evidence Dakota is a dependent child.
 {¶ 18} On September 19, 2008, the court called the matter for further hearing. Both Bonner's and Strong's Counsel informed the court that although their clients were present in the building, they had advised them not to attend the hearing because JFS could not prove its case without the parents' testimony.
 {¶ 19} The court then called the matter for dispositional hearing on the best interest of the child. Both Strong and Bonner objected, asserting they believed the hearing on September 4 was only the adjudicatory hearing, and the present hearing was to be the entire dispositional hearing. JFS stated it believed the present hearing was for the best interest portion, and agreed with the court the hearing on the first portion of the dispositional hearing regarding the termination of appellants' parental rights had occurred on September 4.
 {¶ 20} Thereafter, the court received evidence from the on-going worker assigned to Dakota's case, and the testimony of Cynthia Moore, her supervisor.
Bonner's Assignment of Error I
 {¶ 21} In her first assignment of error, Bonner argues the trial court's finding that Dakota is a dependent child was against the manifest weight and sufficiency of the evidence.
 {¶ 22} R.C. 2151.04 provides the definition of dependency:
 {¶ 23} "(A) Who is homeless or destitute or without adequate parental care, through no fault of the child's parents, guardian, or custodian; *Page 6 
 {¶ 24} (B) Who lacks adequate parental care by reason of the mental or physical condition of the child's parents, guardian, or custodian;
 {¶ 25} (C) Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship;
 {¶ 26} (D) To whom both of the following apply:
 {¶ 27} (1) The child is residing in a household in which a parent, guardian, custodian, or other member of the household committed an act that was the basis for an adjudication that a sibling of the child or any other child who resides in the household is an abused, neglected, or dependent child.
 {¶ 28} (2) Because of the circumstances surrounding the abuse, neglect, or dependency of the sibling or other child and the other conditions in the household of the child, the child is in danger of being abused or neglected by that parent, guardian, custodian, or member of the household."
 {¶ 29} A finding of dependency must be supported by clear and convincing evidence. R.C. 2151.35; Juv. R. 29. The Ohio Supreme Court has defined "clear and convincing evidence" as "[t]he measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." In re: Estateof Haynes (1986), 25 Ohio St.3d 101, 103-104, 495 N.E.2d 23.
 {¶ 30} Even under the clear and convincing standard, our review is deferential. If some competent, credible evidence going to all the essential elements of the case *Page 7 
supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court.State v. Schiebel (1990), 55 Ohio St.3d 71, 74, 564 N.E.2d 54, C.E.Morris Company v. Foley Construction Company (1978), 54 Ohio St. 2d 279,8 O.O. 3d 261, 376 N.E. 2d 578. The credibility of witnesses and weight of the evidence are issues primarily for the trial court, as the trier of fact. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80,461 N.E.2d 1273.
 {¶ 31} Bonner urges although she was incarcerated, Strong had independent housing and family support to provide for Dakota. She also argues the evidence of the prior permanent custody proceedings with the other children did not describe any present circumstances that would place Dakota in danger of being abused or neglected.
 {¶ 32} In the case of In Re: Pieper Children (1993),85 Ohio App. 3d 318, 619 N.E. 1059, the Court of Appeals for the 12th
District, Preble County, stated: "Ohio courts have held that newborn infants can be dependent before they have ever been released into their parent's custody. * * * The state need not subject a child to a potentially detrimental environment where a court has made a prospective finding of dependency pursuant to R.C. 2151.04. A juvenile court should not be forced to experiment with the health and safety of a newborn baby where the state can show, by clear and convincing evidence, that placing the child in such an environment would be threatening to the health and safety of that child." Pieper at 325, citations deleted.
 {¶ 33} We have reviewed the record, and we find the trial court did not err in determining Dakota meets the definition of a dependent child as set forth in the statute. Accordingly, we find the trial court did not abuse its discretion, nor was its finding against the manifest weight and sufficiency of the evidence. *Page 8 
 {¶ 34} Appellant Bonner's first assignment of error is overruled.
 Strong's Assignment of Error II {¶ 35} Appellant Strong argues the trial court erred in failing to hold separate adjudicatory and dispositional hearings prior to granting permanent custody. We agree.
 {¶ 36} In the seminal case of In Re: Baby Girl Baxter (1985), 17 OhIo St. 3d 229, 479 N.E. 2d 257, the Ohio Supreme Court held: "In proceedings where parental rights are subject to termination, both the Juvenile Rules and the Revised Code prescribe that such proceedings be bifurcated into separate adjudicatory and dispositional hearings (R.C.2151.35 and Juv. R. 29 and 34, construed and applied.)" Syllabus by the court, paragraph 1.
 {¶ 37} In a separate concurrence in Baxter, supra, Chief Justice Celebrezze stated: "* * * the Juvenile Rules and Revised Code do not require actual separation into two hearings as the majority implies. A single proceeding may be held as long as there is a shift in emphasis * * * from an adjudicative to a dispositional prospective." Citing In Re:Cunningham (1979), 59 Ohio St. 2d 100, 108, 391 N.E. 2d 1034.
 {¶ 38} Juv. R. 34 states in pertinent part:
 {¶ 39} "Where a child has been adjudicated as an abused, neglected or dependent child, the court shall not issue a dispositional order until after it holds a separate dispositional hearing. The dispositional hearing for an adjudicated, abused, neglected, or dependent child shall be held at least one day but not more than 30 days after the adjudicatory hearing is held. The dispositional hearing may be held immediately after the adjudicatory hearing if all parties were served prior to the adjudicatory hearing with all documents required for the dispositional hearing and all *Page 9 
parties consent to the dispositional hearing being held immediately after the adjudicatory hearing.
 {¶ 40} R.C. 2151.35 contains parallel language.
 {¶ 41} It appears undisputed that the complaint gave notice to the parents JFS had requested permanent custody. It is also undisputed the judgment entry continuing and re-setting the date of the adjudicatory hearing notified all parties the court intended to conduct both the adjudicatory and the dispositional hearings on the same day.
 {¶ 42} Here, the trial court did not make a finding of dependency after the adjudicatory hearing, and the transcript of proceedings shows it did not shift the focus of the proceedings from the child's status to an examination of the statutory factors to be considered in determining whether to terminate the parties' parental rights. Both parents' counsel indicated they did not understand the first hearing had included the issue of whether the parents' parental rights should be terminated. Both parties objected to the court's proceeding to the best interest hearing. Both counsel suggested to their clients they should not attend the hearing on the termination of their rights in order to avoid being cross-examined, given that the proceedings on September 4 was almost exclusively cross examination. This is a tactic useful for the portion of the dispositional hearing regarding terminating the parental rights, but not for a best interest hearing, where JFS did not need the parents' testimony.
 {¶ 43} We find the trial court erred in failing to bifurcate the proceedings on September 4, 2008. Appellant's Strong's second assignment of error is sustained.
 {¶ 44} Appellant Strong's first and third assignments of error challenge evidence admitted during the permanent custody hearing, as do Appellant Bonner's second and *Page 10 
third assignments. Because we reverse and remand the matter for a new dispositional hearing on both termination of the parental rights and the best interest of the child, the evidence may well be presented differently. We find the balance of the assignments of error are moot.
 {¶ 45} Appellant Bonner does not raise the issue of the court's failure to bifurcate the proceedings.
 {¶ 46} It is well recognized that the right to raise a child is an "essential" and "basic" civil right. In re: Hayes (1997)79 Ohio St.3d 46, 48, reconsideration denied 79 Ohio st.3d 1492, quoting In re:Murray (1990), 52 Ohio St.3d 155, 157, 556 N.E.2d 1169, 1171, quotingStanley v. Illinois (1972), 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551, 558. Furthermore, a parent's right to the custody of his or her child has been deemed "paramount." In re: Perales (1977),52 Ohio St.2d 89, 97, 6 O.O.3d 293, 297, 369 N.E.2d 1047, 1051-1052. Permanent termination of parental rights has been described as "the family law equivalent of the death penalty in a criminal case." In re: Smith
(1991), 77 Ohio App.3d 1, 16, 601 N.E.2d 45, 54.
 {¶ 47} This failure to bifurcate the hearings affected the proceedings as they pertain to Bonner as well as to appellant Strong. It would be unfair in the extreme to reverse the court's judgment as to Strong, but not as to Bonner after the procedural flaw is brought to our attention. *Page 11 
 {¶ 48} In the interests of justice, we reverse the judgment as to both appellants and we remand the matter to the court for further proceedings in accord with law and consistent with this opinion.
By Gwin, P.J., and Wise, J., concur; Hoffman, J., concurs in part; dissents in part *Page 12